No. 100,248

CRAIG ALAN FISCHER, *Appellant*, v. STATE OF KANSAS, *Appellee*.
(295 P.3d 560)

Opinion filed March 1, 2013.

*Michelle A. Davis,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Lee J. Davidson,* assistant attorney general, argued the cause, and *Jared S. Maag,* deputy solicitor general, and *Steve Six,* attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: The State of Kansas challenges a decision by a divided Court of Appeals panel ordering a correctional facility inmate's physical presence at his K.S.A. 60-1507 evidentiary hearing. The majority reversed the trial court's determination that the inmate would participate by telephone. The panel held that there was no discretion as a matter of law and ordered that the inmate be transported for new proceedings. *Fischer v. State,* 41 Kan. App. 2d 764, 765-69, 206 P.3d 13 (2009). To resolve the issue, we consider the circumstances under which a prisoner must be produced for such proceedings and the technological alternatives for fair consideration of habeas corpus claims, while giving prisoners reasonable—but meaningful—participation in court hearings affecting them.

We reverse the Court of Appeals because its decision strips district courts of the discretion we hold that they have. But we reverse the district court's judgment because the record on appeal is inadequate for us to conclude whether the district court abused that discretion. We remand to the district court for further proceedings, including development of a more comprehensive record based on the factors discussed below as to whether this particular inmate should be transported to the courthouse for the evidentiary hearing in controversy.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Craig A. Fischer of attempted first-degree murder, aggravated kidnapping, attempted rape, and criminal possession of a firearm. He was sentenced to an 842-month prison term, and the convictions were affirmed on appeal. *State v. Fischer,* No. 87,740, 2004 WL 1609116 (Kan. App.) (unpublished opinion), *rev. denied* 278 Kan. 848 (2004).

In September 2005, Fischer filed a pro se K.S.A. 60-1507 motion for postconviction relief claiming ineffective assistance of trial counsel. Fischer alleged his attorney at the time failed to: (1) investigate, interview, and present possible alibi witnesses; (2) object to allegedly prejudicial statements made by the trial judge; (3) present evidence of a claimed violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (racially-motivated peremptory challenges by State); and (4) object to photographs taken of Fischer by law enforcement for use in a photo lineup.

In 2007, the district court scheduled an evidentiary hearing and appointed counsel for Fischer to advance his motion as permitted by K.S.A. 22-4506 (district court may appoint counsel after finding a 1507 motion presents substantial questions of law or triable issues of fact and movant is determined to be indigent). On the day of the hearing, Fischer appeared by telephone. His counsel called several witnesses to testify, who were in the courtroom and assisted by a Spanish translator. The testimony of another witness was presented by written deposition. Fischer also testified over the telephone. The State did not call any witnesses.

The record on appeal does not reflect whether Fischer filed a pre-hearing motion to physically appear at the hearing, nor does it explain how arrangements were made for Fischer to participate by telephone from the El Dorado Correctional Facility where he was incarcerated. At oral argument, appellate counsel for both parties were unfamiliar with the lower court's pre-hearing arrangements for the telephone conferencing. These deficiencies hamper our ability to resolve the question on appeal.

But the record does reflect that once the district court called the correctional facility to connect with Fischer and the proceedings got under way, Fischer promptly objected that he was not physically present. This objection was immediately overruled without explanation. The entire exchange between Fischer and the district court appears as follows from the hearing transcript:

"Mr. Fischer: Okay. I'd just like for the record—is the record going?
"The Court: Yes, it is.
"Mr. Fischer: I'd just like to state for the record that I'd like to object that this wasn't—that I'm not present for this.

"The Court: Okay.
"Mr. Fischer: I believe it's a habeas corpus and I should have been present.
"The Court: Okay.
"Mr. Fischer: Okay, thank you.
"The Court: You're preserved for [the] record."

In its subsequent written decision denying the K.S.A. 60-1507 motion on its merits, the district court stated that Fischer was given "special permission" to appear by telephone and that his request to personally appear was denied "due to his two previous convictions for murder and the conviction of the underlying case of attempted murder."

The hearing transcript reflects that once the evidentiary portion of the proceedings began, Fischer stated four times he could not hear clearly what was being said. Initially, the court asked whether Fischer wanted the court to move the microphone in the courtroom closer to those in attendance, to which Fischer replied, "Yeah, I'm having a hard time hearing." The court then told the attorney speaking to "talk loud." Soon after, the court addressed Fischer again, asking if he could hear what the attorney was saying. Fischer replied, "No, I'm really having a difficult time with hearing. . . . [b]oth the attorneys are not coming through very well." The court replied that a microphone would be placed closer to the attorneys' lips to "make them talk loud." Then again, during a witness' direct examination, Fischer spoke up and said, "I'm sorry to interrupt, but I cannot hear this witness at all." The court asked the witness to get closer to the microphone and talk as loud as he could, telling the witness, "Don't be shy about it at all." Later, when Fischer was asked about something an earlier witness said, Fischer responded that he was unsure how to answer because he could not hear the witness.

There were also three occasions when Fischer's attorney asked to consult with his client privately about witness testimony. The transcript suggests the court's speaker-phone was disengaged each time to permit Fischer's attorney to pick up a telephone receiver to speak directly with Fischer and that the attorney's side of the conversation was in the presence of the court and opposing counsel. The record does not expressly state whether the room was

emptied so Fischer and his attorney could speak with complete privacy. Finally, when it was Fischer's turn to testify, the judge administered the oath to him over the phone. The sufficiency of that method for securing his oath is not challenged by the parties.

Fischer filed a timely appeal, arguing the district court erred by denying the 60-1507 motion and by refusing to allow him to physically appear at the evidentiary hearing. A majority of the Court of Appeals panel reversed because of Fischer's participation by telephone. The panel did not address the district court's ruling on the merits of the 60-1507 motion.

In the divided decision, the majority held that Fischer had to be physically present for the proceedings and that the district court had no discretion to order otherwise. *Fischer*, 41 Kan. App. 2d 764, Syl. ¶ 1. It held that Fischer's telephone participation was not an adequate substitute because Fischer could not observe what was going on, assist his counsel in examining witnesses, or consult with counsel, and because the trial court was unable to personally gauge the credibility of Fischer's testimony. The panel majority stated: "Although telephonic participation has been deemed sufficient in other proceedings, we believe that the movant's due process interest in an evidentiary hearing in a habeas corpus proceeding to determine whether he or she has been subject to a constitutional deprivation is too significant to justify an appearance by telephone." *Fischer*, 41 Kan. App. 2d at 767-68. The panel remanded for another evidentiary hearing and ordered that Fischer be transported from the correctional facility to the courthouse where his hearing would be held.

In a spirited dissent, Judge Steve Leben observed: "The court's decision in this case will undoubtedly become one of the most widely read decisions in every prison and jail library in Kansas." 41 Kan. App. 2d at 779. Judge Leben objected to what he viewed as the appellate court's unnecessary intrusion into a district court's discretion in determining when evidentiary hearings may be conducted by electronic means, as well as attendant concerns the majority's decision raised for public safety and expense in transporting inmates to distant counties, adding:

"Another reality intrudes here. It's well recognized that inmates—especially those with long sentences—will file habeas cases in hopes of getting the closest thing available in their world to a vacation, a trip outside prison walls. [Citation omitted.] We rightly grant an evidentiary hearing when an inmate's motion states facts that, *if true*, would entitle him or her to relief. [Citation omitted.] So, if we require the physical presence of the defendant any time he or she files a habeas motion that parrots language we've held merited a hearing in someone else's case, we will be letting Kansas inmates write their own day passes from prison at their leisure. To be sure, they'll be in custody while on this pseudo-vacation but at a significant cost to the taxpayer and at some risk to the public." 41 Kan. App. 2d at 771 (Leben, J., dissenting).

The State petitioned this court for review on two issues: (1) whether Fischer was entitled to be physically present at his motion hearing; and (2) if not, whether his trial counsel was deficient. Because we remand to the district court on the first issue, we do not reach the merits of Fischer's 1507 motion. Our jurisdiction is conferred by K.S.A. 20-3018(b) (review of Court of Appeals decision).

## ANALYSIS

Fischer argues he had a right to be physically present at the K.S.A. 60-1507 evidentiary hearing, citing this court's decision in *Lujan v. State*, 270 Kan. 163, 166-67, 14 P.3d 3d 424 (2000). He argues that participation by telephone violates *Lujan* and he is entitled to a new hearing that he can attend in person. But the State argues *Lujan* is distinguishable because it did not address whether a prisoner's due process interests can be satisfied, *i.e.*, a prisoner may meaningfully participate, in a K.S.A. 60-1507 evidentiary hearing by phone. And the State petitioned this court for review of what it characterizes as the Court of Appeals bright-line rule that telephonic participation is never adequate under *Lujan*.

*Standard of Review*

Whether Fischer has a right to be physically present for his hearing depends upon the interpretation of K.S.A. 60-1507 and Supreme Court Rule 183(h) (2012 Kan. Ct. R. Annot. 274). See *Lujan*, 270 Kan. at 166-67. Statutory interpretation is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P. 3d 1130 (2009). Inter-

pretation of Supreme Court rules also is a question of law over which this court has unlimited review. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 460, 196 P.3d 1162 (2008).

*K.S.A. 60-1507 and Supreme Court Rule 183(h)*

K.S.A. 60-1507 controls a Kansas prisoner's habeas corpus relief when certain errors are alleged on sentencing issues and in collateral attacks on convictions. *Battrick v. State*, 267 Kan. 389, 394, 985 P.2d 707 (1999). When first enacted, the statute provided a postconviction remedy and in many instances superseded the procedures previously used for common-law habeas corpus remedies. *Stahl v. Board of County Commissioners*, 198 Kan. 623, 624, 426 P.2d 134 (1967). K.S.A. 60-1507(a) states:

"A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may, pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence."

The legislature enacted K.S.A. 60-1507 in 1963 as part of what was then the new Code of Civil Procedure. L. 1963, ch. 303, sec. 60-1507. *State v. Richardson*, 194 Kan. 471, 472, 399 P.2d 799 (1965). One of the statute's more sweeping changes was to shift the burden of prisoner postconviction litigation to all courts in Kansas by directing that the proceedings would be in the original sentencing court, rather than in those few judicial districts where prisoners were incarcerated. *Stahl*, 198 Kan. at 624. ("The new procedure has this advantage—it permits alleged errors to be reviewed by the court which tried the prisoner and is familiar with his case. It also eliminates the congestion which formerly existed in judicial districts where penal institutions were located."); see Kansas Judicial Council Bulletin, Special Report, p. 12 (November 1962). The statute "is intended to provide in a sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus." *Cox v. State*, 200 Kan. 198, 200-01,

434 P.2d 843 (1967); see *Walker v. State*, 216 Kan. 1, 3, 530 P.2d 1235 (1975).

K.S.A. 60-1507's original language mimicked a comparable federal law made effective in 1948. *Richardson*, 194 Kan. at 472. That federal statute was passed "to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts." *United States v. Hayman*, 342 U.S. 205, 219, 72 S. Ct. 263, 96 L. Ed. 232 (1952). K.S.A. 60-1507's language is substantively unchanged since its enactment in 1963. See L. 1963, ch. 303, sec. 60-1507.

Postconviction proceedings under K.S.A. 60-1507 are civil in nature and not controlled by the same constitutional requirements applicable to criminal cases. *State v. Andrews*, 228 Kan. 368, 375, 614 P.2d 447 (1980). A motion such as the one in this case is separately docketed as an independent civil action and governed by the Rules of Civil Procedure. Supreme Court Rule 183(a)(1) and (a)(2). This court has previously held that a criminal defendant's right to be present in certain criminal proceedings does not extend to all postconviction hearings. See *State v. Ji*, 255 Kan. 101, 116, 872 P.2d 748 (1994) (Defendant's presence at a postconviction hearing on a motion to modify sentence is a matter resting within the sound discretion of the trial court.); *State v. Jennings*, 240 Kan. 377, 378-79, 729 P.2d 454 (1986) (noting statute provided defendant be personally present for correction of a sentence, but not on a motion to modify sentence); *State v. Bryant*, 227 Kan. 385, Syl. ¶ 2, 607 P.2d 66 (1980) (Convicted defendant is not entitled under K.S.A. 22-3405 to be present at a hearing on a new trial motion after imposition of sentence when the ground asserted is newly discovered evidence. Presence at such a hearing rests within the trial court's discretion.).

K.S.A. 60-1507(b) addresses the district court's ability to decide a motion without requiring the movant's presence at a hearing. It states in relevant part:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. *The*

*court may entertain and determine such motion without requiring the production of the prisoner at the hearing."* (Emphasis added.)

So by its express terms, K.S.A. 60-1507 does not require the prisoner's production. Rather, the term "may" is used to describe whether a prisoner is brought to the hearing, indicating court discretion. See *In re D.D.M.*, 291 Kan. 883, 891, 249 P.3d 5 (2011) (the use of "may" in a statute connotes district court discretion).

Supreme Court Rule 183 supplements the statute. It was intended to clarify and make more uniform the procedure used in a K.S.A. 60-1507 motion. *Smith v. State*, 195 Kan. 745, 747, 408 P.2d 647 (1965) (discussing Supreme Court Rule 183's predecessor, Rule No. 121). Rule No. 121 was adopted by this court in 1964, the year after the legislature enacted K.S.A. 60-1507. 194 Kan. XXVII. And although it was renumbered in later years, the rule's provisions remained the same until July 1, 2012, when it was amended. See Rule 183(h). Those revisions will be discussed below, but at the time of Fischer's 1507 hearing, the former rule stated:

"The prisoner *should be produced* at the hearing on a motion attacking a sentence where there are substantial issues of fact as to events in which the prisoner participated. The sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing and requiring the prisoner to be present." (Emphasis added.) Supreme Court Rule 183(h) (2011 Kan. Ct. R. Annot. 260).

Clearly, the rule's then-existing language was a more forceful statement of expectation regarding a prisoner's presence at an evidentiary hearing than what is stated in K.S.A. 60-1507. And in our caselaw, the interplay between the statute and this procedural rule was viewed early on as affording "a full opportunity to present whatever substantial matters can be advanced which could affect the validity of the sentence." *State v. Burnett*, 194 Kan. 645, 647, 400 P.2d 971 (1965). This language also reflected the court's implementation of the then-recent United States Supreme Court holding in *Hayman* and other federal decisions that had developed as a result of 28 U.S.C. § 2255 (1948), which was the model for K.S.A. 60-1507. See *Johnson v. State*, 200 Kan. 708, 710, 438 P.2d

96 (1968); *Richardson*, 194 Kan. at 472-73. The language was born from the following quote in *Hayman*:

"The existence of power to produce the prisoner does not, of course, mean that he should be automatically produced in every Section 2255 proceeding. This is in accord with procedure in habeas corpus actions. Unlike the criminal trial where the guilt of the defendant is in issue and his presence required by the Sixth Amendment, a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction. *Whether the prisoner should be produced depends upon the issues raised by the particular case. Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing.*" (Emphasis added.) 342 U.S. at 222-23.

In *Hayman*, the issue was whether the prisoner had consented to his criminal trial attorney's dual representation in a related case of a principal witness against the prisoner. The Court found the district court erred by conducting a 3-day hearing without notice to the prisoner, who was not present, because the issue obviously involved controverted facts relating to the prisoner's own knowledge, *i.e.*, the prisoner's consent to the alleged conflict. 342 U.S. at 208-09.

Consistent with *Hayman* and secondary legal commentary concerning K.S.A. 60-1507's enactment, this court interpreted the former rule's language in an early decision to mean that a prisoner's presence was not essential when evidence was to be taken on a motion seeking relief under K.S.A. 60-1507—unless the claim for relief involved a substantial issue of fact concerning events in which the prisoner personally had participated. *King v. State*, 200 Kan. 461, Syl. ¶ 2, 436 P.2d 855 (1968). See Foth and Palmer, *Post Conviction Motions Under the Kansas Revised Code of Civil Procedure*, 12 Kan. L. Rev. 493, 497 (May 1964). In emphasizing this discretionary element, the *King* court stated:

"Whenever the trial court considers it advisable to hear evidence relating to a motion filed under K.S.A. 60-1507, *we deem it by far the best practice for the court to require that the prisoner be present; even though his presence may not be essential to the regularity of the proceedings under every set of circumstances.*" (Emphasis added.) 200 Kan. at 463.

The *King* court distinguished between evidentiary hearings on matters involving a substantial issue of fact concerning events in

which the prisoner personally had participated from those not involving such issues. 200 Kan. at 463; see also *Webb v. State*, 195 Kan. 728, 734, 408 P.2d 662 (1965) (prisoner's claim correctly found not substantial, so no error in failing to have prisoner produced for hearing); *Brown v. State*, 196 Kan. 236, 240-41, 409 P.2d 772 (1965) (prisoner's presence required at full evidentiary hearing because it involved a substantial issue of fact as to events in which the prisoner had participated).

But this distinction was blurred in some later caselaw. See *Burnett*, 194 Kan. at 647 (prompt hearing with counsel and prisoner's production are "indispensable in the protection of a movant's right to a fair and adequate hearing on questions of merit and substance"). And in some instances the distinction was obliterated, such as when reference was made incorrectly to a prisoner's "statutory right" to be present at a 1507 evidentiary hearing. See *State v. Webber*, 42 Kan. App. 2d 823, 827, 218 P.3d 1191 (2009). Rule 183(h) now provides a directive to the district courts:

"When the movant is imprisoned, the movant *must* be produced at the hearing on a motion to vacate, set aside, or correct sentence if there are substantial issues of fact regarding events in which the movant participated. A sentencing court may determine whether a claim is substantial before granting an evidentiary hearing and requiring the movant to be present." (Emphasis added.) 2012 Kan. Ct. R. Annot. 276.

We will discuss application of the revised rule to Fischer's case because we are remanding it to the district court for further proceedings.

*Recent Kansas Caselaw*

As noted above, the protections providing for a prisoner's right to an adequate hearing were not seen to extend to trivial, frivolous, or insubstantial claims. See *Redd v. State*, 199 Kan. 431, 433, 429 P.2d 925 (1967); *Perrin v. State*, 196 Kan. 228, 233, 410 P. 2d 298 (1966); *Call v. State*, 195 Kan. 688, 693, 408 P.2d. 668, *cert. denied* 384 U.S. 957 (1966); see *King*, 200 Kan. at 465. In other words, not all motions filed under the statute merit a hearing. And as stated in the statute, a district court's initial review of the files and record may be enough to show the issues raised do not warrant

further review and the matter may be summarily denied. K.S.A. 60-1507(b).

This court, in an effort to distinguish the processes for addressing prisoner claims that were trivial or insubstantial from those meriting greater scrutiny and resources, outlined "three avenues of approach" a trial court could take in 1507 proceedings. *Lujan*, 270 Kan. at 170. We quote from the *Lujan* court's language because its wording prompted the Court of Appeals majority's outcome in Fischer's case. *Lujan* described three possible scenarios for a district court considering a K.S.A. 60-1507 motion as follows:

"First, it may determine that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, in which case it will summarily deny the petitioner's motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the petitioner. Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial. In the event the court determines that the issue or issues are not substantial, the court may move to a final decision without the presence of the petitioner. If the issue or issues are substantial, involving events in which the petitioner participated, the court must proceed with a hearing involving the presence of the petitioner." *Lujan*, 270 Kan. at 170-71.

*Lujan* has been cited numerous times for this three-prong sequencing. See, *e.g.*, *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007); *Swenson v. State*, 284 Kan. 931, 935, 169 P.3d 298 (2007); *State v. Hoge*, 283 Kan. 219, 224, 150 P.3d 905 (2007); *Laymon v. State*, 280 Kan. 430, 436, 122 P.3d 326 (2005); *Love v. State*, 280 Kan. 553, 557, 124 P.3d 32 (2005); *Gaudina v. State*, 278 Kan. 103, 107, 92 P.3d 574 (2004). Fischer latches onto the language in the second prong to argue that *Lujan* requires a prisoner's physical presence at every 1507 evidentiary hearing, and the Court of Appeals majority reached the same conclusion. It held that it was obligated to follow this court's *Lujan* and *Bellamy* decisions, and telephonic participation was insufficient to satisfy the requirement that the full evidentiary hearing occur " 'with the presence of the petitioner.' " *Fischer*, 41 Kan. App. 2d at 766-67.

*Lujan* dealt with a circumstance—much like in Fischer's case—in which the district court had previously determined the ineffective assistance of counsel issues in controversy were substantial enough to warrant a full evidentiary hearing. The district court's error, as the *Lujan* court emphasized, was in deciding over the prisoner's objection that his presence was unnecessary because an affidavit containing his proposed testimony would suffice. 270 Kan. at 171. Our court agreed, stating: "Under the circumstances of this case, the presence of the petitioner was not a question subject to the court's discretion. The petitioner was entitled to be present under the law of this state." 270 Kan. at 171. The court continued by explaining what the prisoner's presence at the hearing might have added to the proceedings beyond providing his admittedly uncorroborated testimony. It noted Lujan's absence precluded him from responding to the evidence presented at the hearing, assisting his counsel with cross-examination, and directly rebutting testimony that contradicted his affidavit. As the *Lujan* court stated: "The affidavit that Lujan was allowed to present was not a proper substitute for his presence." 270 Kan. at 172.

In *Fischer*, the Court of Appeals majority seized upon *Lujan* and interpreted the word "presence," which appeared in both the statute and the rule, to require that Fischer be transported to the evidentiary hearing rather than participating by telephone. And in doing so, the panel majority seems to create a bright-line rule prohibiting telephone conferencing for any K.S.A. 60-1507 evidentiary proceeding. Judge Leben's dissent interpreted the majority's decision as being so broad as to prohibit any other electronic conferencing capabilities as well. *Fischer*, 41 Kan. App. 2d at 771-72. The majority stated:

"We conclude that 'presence' of a 60-1507 movant at a full evidentiary hearing does not include mere telephone participation where: (1) the record fails to cite any basis for denial of physical presence other than the nature of the movant's conviction; and (2) the record reflects substantial difficulty in the movant's ability to hear the proceedings. First, we note that Rule 183(h) does not contemplate mere telephone participation; the Rule states that the movant 'should be *produced*.' Production of the movant clearly means physical presence.

"Second, we do not believe the term 'presence' includes mere telephonic participation. 'Presence' is 'the fact or condition of being present.' Webster's Third

New International Dictionary 1793 (1993). Black's Law Dictionary defines 'presence' as 'the state or fact of being in a particular place and time.' Black's Law Dictionary 1221 (8th ed. 2004). Although telephonic participation has been deemed sufficient in other proceedings, we believe that the movant's due process interest in an evidentiary hearing in a habeas corpus proceeding to determine whether he or she has been subject to a constitutional deprivation is too significant to justify an appearance by telephone. [Citation omitted.]

"We are persuaded that mere telephonic participation in an evidentiary hearing does not enable the movant to hear and observe witnesses, attorneys, or the judge, and certainly does not enable the manner of assistance to his or her own counsel that could be critical to such a hearing. We acknowledge that Fischer was consulted by his attorney on several occasions during the hearing, but the record seems to reflect that these consultations were made with his attorney's side of the conversation spoken in open court. If the movant is entitled to be present at such a hearing, telephonic participation is a poor substitute." 41 Kan. App. 2d at 767-68.

But contrary to the panel majority's strict reading of *Lujan*, that case did not address whether telephone conferencing or other interactive electronic means might have provided a proper substitute for Lujan's physical presence at his hearing. To that extent, the panel majority extended *Lujan* beyond its facts.

We are persuaded that when a particular case warrants further review by the district court, our rules and our existing caselaw allow a court discretionary authority when determining whether a prisoner must be physically transported for any K.S.A. 60-1507 evidentiary hearing, and if not, what alternatives there may be. See Supreme Court Rule 145 (2012 Kan. Ct. R. Annot. 259) (authorizing a court in its discretion to use a telephone or other electronic conference to conduct any hearing other than a trial on the merits).

Drawing from *Lujan* and our recent revision to Rule 183, we reiterate that district courts have three options when faced with a K.S.A. 60-1507 motion: (1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a

substantial issue is presented requiring a full hearing. And if the district court decides a hearing is required, the recent revisions to Supreme Court Rule 183(h) set out two scenarios.

In the first, the motion would not concern a substantial issue of fact regarding events involving the prisoner. In those instances, the rule is silent as to whether the prisoner must be produced; but under K.S.A. 60-1507, the district court may exercise its discretion and order the prisoner's production if it deems such production is warranted. In the second scenario, the motion would concern a substantial issue of fact regarding events in which the prisoner participated and the rule requires the district court provide for the prisoner's production. But this production does not necessarily require a prisoner's physical presence.

It is within the court's discretion to determine the means of production under the rule. In some circumstances, physical presence may be necessary; but in others, alternative means such as two-way interactive technology may suffice. See Supreme Court Rule 145; K.S.A. 2012 Supp. 60-243(a) (for good cause in compelling circumstances and with appropriate safeguards, a trial court may permit testimony in open court by contemporaneous transmission from a different location). In making this discretionary determination as to the manner of production, the district court must protect a prisoner's ability to reasonably—but meaningfully—participate in the proceedings on substantially equal terms with the State after considering the issues presented and any other circumstances deemed relevant by the court. And in the exercise of this discretion, the district court must justify its ruling on the record. See Supreme Court Rule 165 (2012 Kan. Ct. R. Annot. 262) (In contested matters, the judge must state the facts and legal principles controlling the decision.).

Fischer relies on *Bellamy* to advance an argument that his physical presence is always required at any evidentiary hearing. But the case does not stand for that proposition. The principal focus of *Bellamy* was the standard of review that appellate courts must apply for each of the "three avenues of approach" articulated in *Lujan*. 285 Kan. at 354-55. The case does not address whether there was an adequate substitute for Bellamy's physical presence at the

hearing in controversy and did not create a hard-and-fast rule requiring a prisoner's physical presence at all evidentiary hearings. *Bellamy* simply recited *Lujan*'s language while deciding the standard of review questions presented under its facts.

To summarize, on the question whether a prisoner must be physically present at a K.S.A. 60-1507 evidentiary hearing, we adhere to a principle that closely balances the statutory language and Rule 183(h). Both the statute and the rule provide discretion for the district court to decide how a prisoner will be produced for a hearing in those instances requiring it. There is no bright-line rule as suggested by the majority panel mandating physical presence in all instances. The statute expressly states that a court may decide a K.S.A. 60-1507 motion "without requiring the production of the prisoner at the hearing." K.S.A. 60-1507(b). And Rule 183(h), which is intended to complement the statute's operation, states that the prisoner must be produced at a hearing when there are substantial issues of fact regarding events in which the prisoner participated. In that instance, the district court has discretion to determine whether a prisoner must be physically transported to the courthouse or can meaningfully participate by interactive electronic means.

A nonexclusive list of factors that may be relevant for Kansas courts to consider when faced with this question include: (1) whether the prisoner's physical presence substantially furthers resolution of the issues presented; (2) whether the nature of the hearing requires the prisoner to privately communicate with his or her attorney and whether that communication may be accommodated; (3) whether the technology available to the court (closed circuit television, telephone, internet connection) can reliably connect to the prisoner's location; (4) transportation costs; (5) personnel availability; (6) security risks; and (7) the hearing's expected length. But other factors surely will arise depending on the issues being pursued in a particular hearing. See *Hall v. Hall*, 128 Mich. App. 757, 762, 341 N.W.2d 206 (1983) (listing factors one and six); see also Poulin, *Criminal Justice and Videoconferencing Technology: The Remote Defendant*, 78 Tul. L. Rev. 1089, 1108-12 (2004) (discussing some advantages and disadvantages of using technology instead

of transporting the prisoner to the hearing); Raburn-Remfry, *Due Process Concerns in Video Production of Defendants*, 23 Stetson L. Rev. 805, 811-12 (1994) (describing advantages of technology, including that video production lessens security concerns).

In any given case, the parties will need to argue those factors they believe should enter into the court's decision. The district court's resolution of the question should articulate the factors it considered in its ruling on the record. And on review by an appellate court, the district court's decisions regarding whether and how the prisoner is produced will be scrutinized under an abuse of discretion standard. With these factors in mind, we must still decide whether the district court in this case properly exercised its discretion when it decided to have Fischer produced by telephone.

Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Supreme Court Rule 165 places on the district court the primary duty to provide adequate findings and conclusions on the record of the court's decision on contested matters. But a party also has the obligation to object to inadequate findings of fact and conclusions of law in order to preserve an issue for appeal because this gives the trial court an opportunity to correct any findings or conclusions that are argued to be inadequate. When faced with an incomplete record, an appellate court may remand for additional findings and conclusions. *DeWerff v. Schwartz*, 12 Kan. App. 2d 553, 559, 751 P.2d 1047 (1988).

The record in Fischer's case is inadequate to make the necessary findings. It is unclear, for example, what occurred prior to the evidentiary hearing to connect Fischer to the proceedings by telephone. Certainly something must have happened because advanced arrangements were made to call the El Dorado Correc-

tional Facility and for Fischer to be available. The record also does not explain whether Fischer's counsel agreed to or acquiesced in the decision to have his client participate by telephone and does not explain what factors the district court considered in deciding that phone participation was adequate, as opposed to some other alternative.

What the record does reflect is that the district court gave only a very brief, after-the-fact, and cursory reasoning for denying Fischer's request to be physically present. In its decision denying the K.S.A. 60-1507 motion, the district court stated only that it had given Fischer "special permission" to appear by telephone because of two previous murder convictions and the conviction in the underlying case of attempted murder. And while we agree that Fischer's prior convictions enter into the court's exercise of discretion, we cannot see how its self-described "special permission" reconciles with Rule 183(h)'s expectations as we have detailed them. After all, in deciding to hold the evidentiary hearing, the district court necessarily found at least one issue (ineffective assistance of counsel on the alibi defense) that was substantial in nature, and that issue clearly concerned events in which Fischer was involved.

Under the newer version of Rule 183(h), such findings would trigger a mandate that Fischer be produced in some fashion for the hearing. Under the rule as it existed at the time, the prisoner should have been produced. The district court's rulings do not explain how the court thought it could meet that expectation or give Fischer fair consideration of the issues on their merits by having him on the telephone.

In addition, we are unable to evaluate Fischer's multiple complaints that he had difficulty hearing what was being said in the courtroom over the telephone, as well as the arrangements made for Fischer to speak privately with his attorney. The district court did nothing to make a record as to whether Fischer's protests were valid or whether the positioning of counsel and witnesses closer to a courtroom microphone was effective. One solution to this would have been to have someone at the prisoner's location verify whether there are technical difficulties. Otherwise, the district

court has no way of knowing whether the complaints are credible. And since this was not done, we cannot discern whether any communication difficulties actually impacted Fischer's ability to meaningfully participate in the proceedings.

Accordingly, we hold that the district court did not adequately support its decision to have Fischer participate by telephone, and it did not appropriately address whether Fischer's complaints about being unable to hear portions of the proceedings adversely impacted in a material way the presentation of his arguments. We reverse the district court's judgment and remand to the district court for further proceedings. This is to include development of a more comprehensive record as to whether this particular inmate should be transported to the courthouse or whether alternative means of his production, such as the telephone conferencing originally ordered, will be sufficient based on the considerations described above.

The decision of the Court of Appeals is reversed. The decision of the district court is reversed and remanded with directions.

MORITZ, J., not participating.

KIM W. CUDNEY, District Judge, assigned.