NOT DESIGNATED FOR PUBLICATION

No. 115,456

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID MARTINEZ MORENO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed June 2, 2017. Reversed and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.

*Per Curiam*: David Martinez Moreno appeals the district court's decision to impose his underlying prison sentence—rather than a brief stay in jail or prison followed by continued supervision—after he violated his probation. The district court concluded that it could send Moreno to prison without first imposing an intermediate sanction because he had absconded. But Moreno contends there was insufficient evidence to demonstrate he absconded, so the district court erred in imposing his underlying prison sentence. We agree and therefore reverse the judgment of the district court revoking Moreno's probation and remand with directions to reinstate probation.

1

FACTS

In September 2014, Moreno pled no contest to one count of possession of methamphetamine and one count of driving with a suspended license. At sentencing, the district court granted Moreno's request for a downward dispositional departure, meaning the court agreed to place him on probation instead of sending him to prison. Accordingly, the court sentenced Moreno to 18 months' probation, but if he failed on probation, he would have to serve 40 months in prison.

Because Moreno was living in Sedgwick County on December 5, 2014, when he was sentenced, Sedgwick County community corrections began supervising Moreno on probation as a courtesy to Saline County. But on June 15, 2015, Sedgwick County terminated this courtesy supervision based on Moreno's failure to attend appointments with his supervising officer, his failure to attend classes in the alcohol and drug treatment program, and his failure to attend the job tech program. As a result of this termination, Moreno was directed to meet with Saline County community corrections and to attend alcohol and drug treatment there. According to Moreno's Saline County intensive supervision officer (ISO) Ruth McDaniel, Moreno successfully complied with the requirements of his probation for about 1 month but the last contact Moreno had with Saline County community corrections was July 24, 2015.

On August 13, 2015, Saline County community corrections turned the case over to what ISO McDaniel referred to as its absconder locator program. According to ISO McDaniel, the absconder locator program was generally used when the person being supervised showed a pattern of failing to contact a supervising officer by phone, voice mail, or other means. The absconder program usually lasted from 30 to 60 days, depending on the offense and the criminal history. If the absconder locator program was unsuccessful in locating the offender in that 30- to 60-day time window, community

2

corrections considered filing a motion to have the offender show cause why probation should not be revoked.

As noted above, community corrections turned the case over to the absconder locator program on August 13, 2015, about 3 weeks after Moreno last had contact with community corrections. ISO McDaniel testified that absconder program staff attempted to make contact with Moreno by visiting his parents' house on numerous occasions, by attempting to locate him on Facebook, by sending one letter to his last known address, and by having the surveillance staff attempt to locate him. Unbeknownst to community corrections or the absconder program staff, however, Moreno was arrested and taken into custody by Sedgwick County on September 1, 2015. Sedgwick County ultimately kept Moreno in the Sedgwick County Jail on charges out of Oklahoma.

On September 18, 2015, the State filed a motion to revoke probation because Moreno had failed to report, failed to keep his supervision officer informed of his address and employment, failed to submit to random urinalysis tests, and failed to pay courts costs as directed. The State alleged that Moreno's whereabouts were unknown, despite numerous attempts by absconder locators to find him. Although there is no question that Moreno had been in custody at the Sedgwick County Jail for over 2 weeks at the time the State filed its motion to revoke probation, the absconder locator program was not aware of this fact. And after the motion to revoke probation was filed and a warrant issued for Moreno's arrest, the State still did not become aware of the fact that Moreno was in custody at the Sedgwick County Jail. ISO Mitchell explained that for some reason the "Saline County warrant did not appear to be active." In fact, Saline County community corrections did not learn that Moreno had been in custody at the Sedgwick County Jail until November 17, 2015—almost 7 weeks after he was taken into custody—and they only learned about it because Moreno's significant other called the office and told them.

The probation revocation hearing was held on November 25, 2015. Moreno appeared in person and through counsel. At the hearing, Moreno stipulated to violating the conditions of probation as alleged, with the caveat that he had been in custody in Sedgwick County since September 1, 2015. Based on the stipulation, the district court found a probation violation. The State then called ISO McDaniel to testify about the efforts made by the absconder locator program to discover Moreno's whereabouts from August 13, 2015, to September 18, 2015, which we set forth above: going to his parents' house, looking on Facebook, sending one letter to his last known address, and having the surveillance staff attempt to locate him.

The State requested the district court revoke probation and impose the underlying prison sentence because Moreno had failed to complete any of the requirements in the year he had been on probation and "was wasting the resources of community corrections." Moreno requested the court impose only a jail sanction, arguing that he had not absconded and had been staying at his last known residence and trying to find jobs before he was arrested and held in Sedgwick County.

The district court determined that Moreno had absconded, and as such it could send him to prison without imposing an intermediate sanction. See K.S.A. 2016 Supp. 22-3716(c)(8). The court noted that Moreno had failed to make any contact with community corrections from July 24, 2015, to November 17, 2015, when his significant other informed them that Moreno was in custody, recognizing that Moreno was in jail beginning September 1 and was unable to report. The district court discussed that that left approximately 5 weeks (from July 24 to September 1) when Moreno was "who knows where" and emphasized the efforts of absconder locators to find him. The court concluded that Moreno's "pattern of behavior and the efforts by community corrections to find him does evidence an effort by Mr. Moreno to conceal himself and not be found during that period of time," which the district court believed would satisfy this court's definition of absconding set out in *State v. Huckey*, 51 Kan. App. 2d 451, 348 P.3d 997,

4

*rev. denied* 302 Kan. 1015 (2015). The court then ordered Moreno to serve 40 months in prison.

ANALYSIS

On appeal, Moreno argues that the district court erred in concluding that he absconded, which in turn means it was error to revoke his probation and impose his underlying prison sentence without first imposing intermediate sanctions.

Once a probation violation has been established, the decision to revoke probation is within the sound discretion of the district court. *State v. McFeeters*, 52 Kan. App. 2d 45, 48, 362 P.3d 603 (2015). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Fischer v. State*, 296 Kan. 808, Syl. ¶ 8, 295 P.3d 560 (2013). Moreno bears the burden to show an abuse of discretion in revoking probation. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012). Whether the district court properly imposed a sentence after revoking Moreno's probation is a question of law over which an appellate court exercises unlimited review. See *McFeeters*, 52 Kan. App. 2d at 48.

Although Moreno asserts that he is challenging the district court's decision to revoke his probation, the central thrust of Moreno's argument on appeal is that the court erred in finding he was an absconder and imposing his underlying prison sentence without first imposing intermediate sanctions. Moreno stipulated to violating his probation. He has not pointed to any errors of fact or law in the district court's decision to revoke his probation, nor do we find the decision to be arbitrary, fanciful, or unreasonable. In light of Moreno's stipulation to violations and the lack of anything in the record to suggest the district court's decision was arbitrary, fanciful, or unreasonable, we conclude the district court did not abuse its discretion in revoking Moreno's probation.

See *McFeeters*, 52 Kan. App. 2d at 48 (holding that district court did not abuse its discretion in revoking probation when defendant stipulated to violations).

The remaining question on appeal is whether the district court erred in ordering Moreno to serve his underlying prison sentence. Unless an exception applies, K.S.A. 2016 Supp. 22-3716(c) requires that the court impose an intermediate sanction before ordering someone who has violated probation in a felony case to serve his or her underlying prison sentence. The first intermediate sanction is 2 or 3 days in county jail. K.S.A. 2016 Supp. 22-3716(c)(1)(B). Following the first sanction, the court may order the probationer to serve 120 or 180 days in prison, but these longer sanctions may only be ordered once. K.S.A. 2016 Supp. 22-3716(c)(1)(C)-(D).

But a district court need not impose any intermediate sanction before imposing a prison sentence if any of the following exceptions apply: (1) the probationer commits a new felony or misdemeanor, (2) the probationer absconds from supervision, or (3) if the court sets forth with particularity the reasons for finding the safety of the public will be jeopardized or the welfare of the probationer will not be served by imposing an intermediate sanction. K.S.A. 2016 Supp. 22-3716(c)(8)-(9); *Huckey*, 51 Kan. App. 2d 451, Syl. ¶ 4.

Here, the district court concluded that it could bypass the intermediate sanctions and impose Moreno's underlying sentence because he had absconded. This court has explained the procedure for determining the absconder issue in *Huckey*. The State first must allege that the probationer absconded. Then, at an evidentiary hearing, the State must prove that the probationer absconded by a preponderance of the evidence, so that the district court may rule on the evidence. On appeal, this court reviews the factual findings for substantial evidence. 51 Kan. App. 2d at 457.

We note, as a preliminary matter, that the motion to revoke probation filed on September 17, 2015, by the Saline County Attorney asked the district court for a hearing to determine whether Moreno's probation should be revoked and the underlying prison term imposed based on the following violations: failure to report to his ISO, failure to keep his ISO advised of his residence and employment, failure to submit to random urinalysis testing, and failure to pay court costs. But the motion contains no allegation or argument that Moreno had absconded. See *Huckey*, 51 Kan. App. 2d at 457 (in order for court to take up issue of whether probationer has absconded, State first must allege that probationer absconded).

The State also failed to allege Moreno absconded in its argument in support of probation revocation at the close of evidence at the probation revocation hearing:

> "MS. MITCHELL: Judge, this defendant is criminal history 'A.' He was placed on probation just pretty close to a year ago. It was on a drug case. Court—he was to enter into a treatment program as part of his dispositional departure.
>
> "He has done nothing in a year. He doesn't report. He doesn't have legal visible employment. He hasn't made any payments. He hasn't gone through a treatment program.
>
> "They tried in Sedgwick County. They accommodated him by sending him to Sedgwick County. He didn't report or go to treatment there. They gave him another opportunity here. Looks like he again didn't report and didn't go to treatment. He was wasting the resources of community corrections and of the programs that the court system here has to offer.
>
> "And he—they made attempts, they looked for him, couldn't find him at his last known address at this parents, calls, et cetera. They put in a greater effort than they should have to, still couldn't find him.
>
> "He had a girlfriend or he had parents. Nobody called Miss McDaniel and advised where he was or what was going on. They didn't have any idea.
>
> "And a local jail sanction is not appropriate here. We're asking that you send him to Department of Corrections."

In its appellate brief filed almost 1 year after the probation revocation hearing, the State asserts that at the beginning of the November 25, 2015, hearing it "asked to supplement the record to present evidence on the absconder issue. (R.VI, 3)." The citation to the transcript provided by the State, however, does not support the State's assertion. The only statements made by the county attorney at the hearing on the page cited are as follows:

"MS. MITCHELL: Judge, we'll probably going to have to have testimony from his ISO, but this is—he's criminal history 'A,' it's a departure case, and I would like to present evidence on how long he's been gone and their attempt to locate him."

Based on the allegations in the motion to revoke and the State's argument at the close of evidence at the hearing on that motion, we conclude that the State failed to allege the probationer absconded; thus, the court erred, under the procedure set forth in *Huckey*, in bypassing the intermediate sanctions and imposing Moreno's underlying sentence based solely on its finding that Moreno had absconded from custody.

Even if the State properly had raised the issue, however, our review of the record reflects a lack of evidence to establish that Moreno absconded. In *Huckey*, we provided this definition: "Abscond is defined as to depart secretly or suddenly, especially to avoid arrest, prosecution, or service of process." 51 Kan. App. 2d 451, Syl. ¶ 5. To support a finding of absconding, the State must prove by a preponderance of the evidence that the probationer "had fled or hidden himself or deliberately acted to avoid arrest, prosecution, or service of process." 51 Kan. App. 2d at 458. And the *Huckey* court made clear that merely failing to report is not absconding. 51 Kan. App. 2d at 457.

A failure to report combined with several other factors can support a finding that the defendant has absconded. In *State v. Croslin*, No. 113,695, 2016 WL 758661 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. __ (January 23, 2017), while on

probation here in Kansas, the defendant had moved to Oklahoma, provided an incorrect new address in Oklahoma, could not be located after some effort (including speaking with his daughter), and admitted "that he failed to report because he wanted to avoid arrest" under an outstanding warrant. 2016 WL 758661, at *4. In *Croslin*, there was more than a failure to report—the defendant had acted to depart secretly by providing the wrong address for his new residence, and he had failed to report specifically to avoid arrest.

Here, while it is true that Moreno quit reporting, there is no evidence that he did anything to hide or that he changed his address or place of employment during the period in which he failed to report. In fact, he was arrested approximately 5 weeks after his last contact on July 24 with Saline County community corrections. Although there was evidence that the absconder program staff may have visited and sent one letter to Moreno's parents' house, neither of those situations would prove absconding. Moreno's parents were not subject to any court order, and even if they told Moreno that community corrections was looking for him and Moreno continued not to report, that would not be absconding; *i.e.*, deliberately concealing or hiding. The evidence presented at the hearing merely established that Moreno failed to report from his next appointment after July 24, 2015, to September 1, 2015. Efforts made by community corrections or an absconder locator program are immaterial in the absence of evidence that the probationer has made some effort to depart secretly or suddenly, flee, hide, or deliberately act to avoid arrest, prosecution, or service of process. *Huckey*, 51 Kan. App. 2d at 457-58. There is no such evidence here; thus, the district court erred by finding that Moreno had absconded.

The judgment of the district court revoking Moreno's probation is reversed and remanded with directions to reinstate probation.

9